IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**MICHAEL JAMES FIFIELD**,                                    Civ. No. 3:15-cv-02180-CL

       Plaintiff,

                                 **REPORT AND**

v.                                                                                      **RECOMMENDATION**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF SOCIAL SECURITY**,

       Defendant.

_____

CLARKE, Magistrate Judge.

Plaintiff Michael James Fifield ("Fifield") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c), and reviews to determine whether the Commissioner's decision is based upon substantial evidence. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Commissioner's decision should be affirmed for the following reasons.

///

## BACKGROUND

Born in 1965 (Admin. R. 284), Mr. Fifield has a high school education, which included special education. *Id.* at 47, 348. He alleges disability beginning December 10, 2010, *id.* at 284, due to decreased mental capacity, epilepsy, high blood pressure, leg pain, and depression. *Id.* at 347.

The Commissioner makes disability determinations under the Act using a regulatory five-step analysis. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Following a hearing, an Administrative Law Judge ("ALJ") found Mr. Fifield not disabled on June 23, 2014. Admin. R. 20-36. The ALJ found Mr. Fifield's borderline intellectual functioning, adjustment disorder, and anxiety disorder "severe" under the Commissioner's regulations, *id.* at 23, but concluded they did not meet a regulatory listing. *Id.* at 25. The ALJ determined that Mr. Fifield retained the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels," but was limited to "simple repetitive tasks with no public contact and only occasional contact with supervisors and coworkers." *Id.* at 28. The ALJ found that this RFC prevented Mr. Fifield from performing his past relevant work but concluded he could perform work in the national economy, *id.* at 34-35, and consequently found Mr. Fifield not disabled under the Act. *Id.* at 35.

The Commissioner's Appeals Council denied review of the matter. *Id.* at 1-3. That action finalized the ALJ's decision, making it subject to this court's review. 20 C.F.R. § 410.670a.

///

///

## STANDARD OF REVIEW

This court must affirm the ALJ's decision if it is based on proper legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see* also *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "Substantial evidence" means "more than a scintilla but less than a preponderance." It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1035 (9th Cir. 2007)). Under this standard, the ALJ need not discuss every piece of evidence of record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 134 F.3d 383, 386 (8th Cir. 1998)).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 446 F.3d 880, 882 (9th Cir. 2006)); *see* also *Garrison*, 759 F.3d at 1009-10. Finally, the reviewing court may not affirm the Commissioner on grounds upon which the Commissioner did not rely. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *see* also *Brown-Hunter*, 806 F.3d at 1138.

## ANALYSIS

Mr. Fifield asserts that the ALJ: (1) erroneously evaluated opinions submitted by his treating physician, the opinions of two examining physicians, and that of a reviewing physician; (2) improperly rejected his testimony and that of two lay witnesses; (3) erroneously found

numerous impairments non-severe under the Commissioner's regulations; (4) erroneously found him able to perform work in the national economy at step five in the sequential regulatory analysis; and (5) violated his due process rights.

## I.    Medical Evidence

### A.  Standards

The Commissioner relies upon medical evidence to make disability determinations; the regulations distinguish between treating, examining, and reviewing physicians.  20 C.F.R. §§ 404.1527(c) and (e); 416.927(c) and (e).  The regulations reserve disability determinations to the Commissioner, and a physician's statement that an individual is unable to work does not direct a finding of disability.  *Id.* at §§ 404.1527(d)(1); 416.927(d)(1).  The Commissioner cannot "give any special significance" to the source of an opinion on this issue.  *Id.* at §§ 404.1527(d)(2) and 416.927(d)(2).

Judicial review consequently distinguishes between treating, examining, and reviewing physicians.  *See, e.g., Garrison*, 759 F.3d at 1012 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  A treating physician's opinion "must be given controlling weight if that opinion is well supported and not inconsistent with other substantial evidence in the case record."  *Edlund v. Massinari*, 253 F.3d 1152, 1157 (9th Cir. 2001); *see* also *Garrison*, 759 F.3d at 1012.  The ALJ resolves "conflicting medical evidence" on the matter, but "must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).  If the treating physician's opinion is contradicted, the ALJ must provide "specific and legitimate" reasons for rejecting it.  *Garrison*, 759 F.3d at 1012 (citing *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  Here, the regulations direct that the Commissioner consider medical specialty, nature and extent of treating

Page 4 – REPORT & RECOMMENDATION

relationship, supporting evidence, consistency, and other factors. *Garrison*, 759 F.3d at 1012 at n. 11; 20 C.F.R. §§ 404.1527(c)(2-6); 416.927(c)(2-6).

An examining physician's opinion, in turn, receives greater weight than that of a reviewing physician, and the ALJ must set out "specific, legitimate" reasons for rejecting the opinion of an examining physician for that of a reviewing physician. *Nguyen Chater*, 100 F.3d at 1462, 1466 (9th Cir. 1996) (citing *Lester*, 81 F.3d at 831). The ALJ may weight a reviewing physician's opinion depending "upon the degree to which" the reviewing physician supports his opinion. *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198); 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3). But, a reviewing physician's opinion alone may not constitute substantial evidence justifying rejection of a treating or examining physician's opinion. *Lester*, 81 F.3d at 831. Finally, the ALJ may reject any contradicted opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1149 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

## B.   Treating Medical Source Opinion

Mr. Fifield asserts that the ALJ erroneously "completely failed to address" the opinion of his treating internist Richard Howe, M.D. Pl.'s Op. Br. 7. He specifically asserts that the ALJ ignored Dr. Howe's December 8, 2010, hospital discharge note. *Id.*

Dr. Howe and his associates provided Mr. Fifield's routine primary care in January and May 2008. Admin. R. 591-600. In January 2008 Dr. Howe assessed right foot pain that began when Mr. Fifield tripped over cats. *Id.* at 600-01. Imaging studies showed unrelated heel bone spurring and slight tissue swelling. *Id.* at 601. In May 2008 Dr. Howe treated a right-arm bruise and advised Mr. Fifield to reduce his alcohol use. *Id.* at 591-92.

Dr. Howe and his associates at the Moscow Family Medicine clinic treated Mr. Fifield during his 2010 hospitalizations for acute alcohol withdrawal and associated seizures. *Id.* at 579. Mr. Fifield was first admitted on August 10, 2010, for a grand mal seizure. The attending physician stated this was an alcohol-withdrawal seizure. *Id.* at 452, 583-84. Dr. Howe discharged Mr. Fifield against medical advice the next day, and told Mr. Fifield that he was at risk for further alcohol-withdrawal seizures "which could be fatal." *Id.* at 523-24, 579-80.

Mr. Fifield again presented at the emergency room on December 2, 2010, in acute alcohol withdrawal and was admitted for detoxification. *Id.* at 520. Dr. Howe's associate, Randall Lorenz, M.D., assessed acute and chronic alcoholism and a history of alcohol-withdrawal seizures. *Id.* at 578. On December 3, 2010, Dr. Lorenz stated that Mr. Fifield was prescribed anti-seizure medication "due to history of seizures with [alcohol] withdrawal," and that "it has been possible to prevent recurrent seizure by Dilantin being started on admission." *Id.*

Dr. Howe discharged Mr. Fifield from the hospital on December 8, 2010. Tr. 485-86, 515-16 [duplicate]. Dr. Howe's discharge report stated, "Suspicion that he probably had another grand mal seizure secondary to alcohol withdrawal." *Id.* at 485, 515. The discharge summary also referenced "consults/procedures: cognitive evaluation by speech therapy showed significant cognitive impairments that make independent living and keeping a job very difficult." *Id.* at 484, 515. The associated evaluation is not in the record now before the court.

At a December 22, 2010, follow-up clinic visit Dr. Howe stated Mr. Fifield was using a cane for balance problems that began two weeks earlier in association with his alcohol-withdrawal seizure and fall. *Id.* at 512, 568. Dr. Howe reviewed Mr. Fifield's prior history of

alcohol-withdrawal seizures, and prescribed seizure medication for this purpose.  *Id.* at 513, 569.  Dr. Howe saw Mr. Fifield for an outpatient follow-up visit on January 21, 2011.  *Id.* at 509.

The ALJ discussed Dr. Howe's notes, observations, and opinions throughout his decision.  He cited this evidence by exhibit number.  *Id.* at 23 (citing Ex. 2F, p. 3, 9,10), *id.* at 30 (citing Ex. 1F, p. 3, 10, 11, 38, and Ex. 5F p. 5-9).  Exhibit 1F contains Gritman Medical Center treatment records.  Admin. R. 450-506.  This is the hospital where Dr. Howe treated Mr. Fifield as an inpatient in August and December 2010.  Exhibits 2F and 5F contain Moscow Family Medicine Clinic notes.  *Id.* at 507-534; 558-601.  This is Dr. Howe's clinic, where he treated Mr. Fifield as a routine outpatient.

The indicated exhibits contain Dr. Howe's treatment notes and opinions.  The ALJ need not discuss a physician by name, and Mr. Fifield's submission that the ALJ "completely failed to address" Dr. Howe's opinions is not based upon this record.

Mr. Fifield's specific assertion that the ALJ ignored Dr. Howe's opinion regarding his workplace abilities misconstrues Dr. Howe's December 8, 2011 discharge note.  Dr. Howe did not opine that Mr. Fifield had cognitive deficits apparently assessed by the speech therapist.  The speech therapist's notes are not in the record before the court.  The ALJ's assessment of Dr. Howe's opinion is based upon the record and therefore should be sustained.

## C.   Examining Medical Source Opinions

### 1.   Examining Psychologist Michael Leland, Psy. D.

Mr. Fifield asserts that the ALJ did not address specific portions of the opinion of examining psychologist Michael Leland, Psy. D.  Pl's Op. Br. 8.  He argues that the ALJ therefore did not provide "specific and legitimate" reasons for rejecting it.  Pl.'s Op. Br. 8.

Dr. Leland performed an intellectual assessment on May 17, 2011. Admin. R. 542-52. He reviewed limited educational and medical records, performed a clinical interview, and administered diagnostic testing. *Id.* Dr. Leland assessed a full-scale IQ of 79, which placed Mr. Fifield in the "borderline" range of intellectual functioning. *Id.* at 550. Dr. Leland diagnosed "history of alcohol abuse, reportedly in full sustained remission" and borderline intellectual functioning. *Id.* at 551-52. He also noted Mr. Fifield's reports of a seizure disorder and low back musculoskeletal complaints. *Id.* at 552.

Dr. Leland concluded that Mr. Fifield "may be able to function independently in a well-supervised employment circumstance but may find some challenges in functioning effectively in a truly competitive work environment," and suggested referral to vocational rehabilitation services for additional employment resources. *Id.* at 551.

The ALJ repeatedly discussed Dr. Leland's opinion. *Id.* at 25-27, 29, 30. He cited Dr. Leland's description of Mr. Fifield's reported daily activities and work history. *Id.* at 25, 30. The ALJ accepted Dr. Leland's findings that Mr. Fifield could complete basic attentional tasks and understand simple oral instructions. *Id.* at 26. He also accepted Dr. Leland's opinion that Mr. Fifield's attention, concentration, and tracking were adequate, *id.* at 27, 33, and, finally, accepted Dr. Leland's IQ assessment. *Id.* at 29.

Mr. Fifield does not show that the ALJ failed to address Dr. Leland's clinical observations and diagnostic conclusions. While the ALJ did not discuss Dr. Leland's suggestion that Mr. Fifield might benefit from vocational rehabilitation counselling before entering a competitive workplace, the ALJ need not discuss "every piece of evidence" in the record, especially where he provides an "in-depth discussion" of physician reports. *Hughley v. Colvin*,

628 Fed. Appx. 519, 520 (9th Cir. 2016) (not reported)[1]; *Howard*, 341 F.3d at 1012 (9th Cir. 2003); *see* also *Vincent v. Heckler*, 739 F.3d F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ discussed and accepted Dr. Leland's opinion in considerable detail, Admin. R. 26, 29, 33, and Mr. Fifield therefore fails to demonstrate legal error.

### 3.      Examining Physicians Donald Ramsthel, M.D., and Kim Webster, M.D.

Mr. Fifield asserts that the ALJ improperly rejected the opinion of examining physician Donald Ramsthel, M.D., that he could perform light work only. Pl.'s Op. Br. 9.

Two examining physicians addressed Mr. Fifield's physical impairments. Dr. Ramsthel examined Mr. Fifield in April 2011. Admin. R. 536-40. In October 2012 Kim Webster, M.D., performed a second examination. *Id.* at 607-12. The ALJ relied upon both. *Id.* at 24, 31-32, 34.

Dr. Ramsthel evaluated Mr. Fifield on April 23, 2011. Admin. R. 536-40. He assessed "seizure disorder," and stated that, based upon Mr. Fifield's report and the December 2010 medical records available for his review, Mr. Fifield had a seizure disorder. *Id.* at 526. Dr. Ramsthel's report also relied upon Mr. Fifield's report that he had not used alcohol in two years. *Id.* at 537. In conclusion, Dr. Ramsthel assessed a seizure disorder, alcohol "abuse/dependence," left hip pain "possibly with early degenerative changes but no imaging studies," a learning disorder, anxiety, and depression. *Id.*at 540. Dr. Ramsthel stated that "I believe [Mr. Fifield] could be walking or standing for 2+ hours at a time before needing to rest, translating into 5-6 hours of an 8-hour day." *Id.*

Dr. Webster performed a second musculoskeletal evaluation on October 26, 2012. *Id.* at 607-15. Dr. Webster reviewed Dr. Ramsthel's opinion (*id.* at 608), and noted Mr. Fifield's

---

[1] Cited in accordance with 9th Cir. R. 36-3.

reports of epilepsy without any experience of a seizure in the past three years, cognitive dysfunction, and left sacroiliac joint pain. *Id.* at 608.    Dr. Webster also noted that Mr. Fifield did not use an assistive device, such as a cane, and did not require one. *Id.* at 610. He concluded that Mr. Fifield carried diagnoses of epilepsy, cognitive dysfunction, left sacrioilliac joint pain with normal examination, decreased pinprick sensation to the left leg, bilateral edema without evidence of symptoms of heart failure, and alcoholism "currently in recovery." *Id.* at 612. An associated left hip x-ray showed no fracture or injury to Mr. Fifield's hip or sacroiliac joint, and no identifiable degenerative disease. *Id.* at 613.

In conclusion, Dr. Webster found "no objective evidence to limit standing, walking, sitting, lifting, or carrying both occasionally and frequently," no evidence or need for an assistive device, and "no objective evidence for postural, manipulative, visual, communicative or environmental limitations." *Id.* at 612.

The ALJ accepted Dr. Ramsthel's diagnostic findings and assessment, but gave "moderate weight to Dr. Ramsthel's opinion concerning the claimant's ability to stand, walk, and sit." *Id.* at 31. The ALJ gave "little" weight to Dr. Ramsthel's opinion that Mr. Fifield can carry 30 pounds occasionally and 20 pounds frequently because "there is nothing in his report that warrants" this limitation. *Id.* The ALJ gave "great" weight to Dr. Webster's opinion because he found it "consistent with the longitudinal evidence of record and with the details of his examination" of Mr. Fifield. *Id.* at 32.

No treating physician directly addressed Mr. Fifield's physical limitations. Because the opinions of the examining physicians contradict, the ALJ was required to give specific and legitimate reasons only for rejecting one in favor of the other. *Garrison*, 759 F.3d at 1012. An ALJ may satisfy the Act's requirement that his decision be based upon substantial evidence by

"setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). The ALJ's discussion was detailed, cited conflicting evidence, and clearly identified his conclusions. This reasoning is sufficient and should therefore be affirmed.

### C. Reviewing Medical Source Opinions

Mr. Fifield asserts the ALJ "overlooked" the opinions of reviewing psychologist Barney Greenspan, Ph.D., and physician Neal Berner, M.D. Pl.'s Op. Br. 9. Both reviewed Mr. Fifield's record for Disability Determination Services.[2]

Dr. Greenspan reviewed Mr. Fifield's record and endorsed "mild" restrictions of daily living, "moderate" difficulties in maintaining social functioning, and "marked" limitations in concentration, persistence, and pace. Admin. R. 152. His narrative analysis did not discuss limitations in concentration, persistence, and pace. *Id.* at 151. Dr. Greenspan subsequently found Mr. Fifield "markedly" limited in his ability to understand, remember, and carry out detailed instructions (*id.* at 154-55), but otherwise "not significantly limited" in a wide variety of fields related to "concentration and persistence." *Id.* at 155. He explained:

> [Claimant] would have some concentration difficulties [due to] [borderline intellectual functioning] but is able to concentrate sufficiently to perform simple tasks. Can make simple decisions. Some evidence of distractibility but this would not interfere with the ability to complete a normal workday/workweek performing simple tasks with scheduled rest periods.

*Id.* at 155.

The ALJ discussed Dr. Greenspan's opinion addressing Mr. Fifield's concentration, persistence, and pace. *Id.* at 33. He found it internally inconsistent, and inconsistent with the

---

[2] Disability Determination Services ("DDS") is a federally-funded state entity that makes initial disability determinations on behalf of the Commissioner pursuant to 42 U.S.C. § 421(a).

opinions of Dr. Leland and examining psychologist Patrick Ethel-King, Ph.D. *Id.* at 33. The record above reflects this finding. A reviewing physician's opinion alone cannot constitute substantial evidence, *Lester*, 821 F.3d at 831, and the ALJ need only give sufficiently specific reasons for rejecting a contradicted reviewing physician's opinion. *See Garrison*, 759 F.3d at 1012 (stating that an ALJ's failure to set out specific, legitimate reasons for rejecting one medical opinion over another is error). The ALJ's reasoning is based upon the record and therefore sustained.

Dr. Berner also reviewed the record in May 2011 and found Mr. Fifield limited to occasionally lifting no more than twenty pounds. Admin. R. 79-81. The ALJ need not examine every piece of evidence in the record. *Howard*, 341 F.3d at 1012. Here, the ALJ accorded greater weight to the opinions of numerous treating, examining, and reviewing physicians discussed above. This is consistent with controlling legal standards directing that the ALJ give greater weight to the opinions of treating and examining medical sources. Further, a reviewing physician's opinion alone cannot constitute substantial evidence justifying rejection of treating or examining physician opinions. *Lester*, 81 F.3d at 831. Mr. Fifield therefore fails to establish error.

### D.    Conclusion – Medical Evidence

In summary, the ALJ's analysis of the medical evidence above was based upon the record and appropriate legal standards. The ALJ's findings should be affirmed.

///

///

///

///

## II.    Testimonial Evidence

### A.  Claimant's Testimony

#### 1.  Claimant Testimony Standards

The Act allows consideration of a claimant's symptom testimony.  Pain allegations must correspond to a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).  The regulations subsequently direct the Commissioner to consider a claimant's statements regarding his symptoms.  20 C.F.R. §§ 404.1529(a); 416.929(a). This analysis is individualized, but alleged pain and functional limitation must again relate to a medically-determinable impairment.  *Id.* at §§ 404.1529; 416.929.

The Ninth Circuit consequently directs a two-step process in evaluating a claimant's pain and symptom testimony.  First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged."  *Lingenfelter*, 504 F.3d at 1036.  Here, the claimant need only show that the impairment "could reasonably have caused some degree of the symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996), *reaff'd by Brown-Hunter*, 806 F.3d at 493.  Second, absent evidence of malingering, the ALJ may conclusively reject a claimant's testimony to the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so."  *Brown Hunter*, 806 F.3d at 493, citing *Burrell*, 775 F.3d at 1136-37; *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008), citing *Lingenfelter*, 504 F.3d at 1036.  Such findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Bunnell v. Sullivan*, 947 F.3d 341, 345-46 (9th Cir. 1991), *en banc*; *see* also *Brown-Hunter*, 806 F.3d at 493.

## 2. Analysis

The ALJ discussed Mr. Fifield's testimony in relation to his medical record, activities, and associated limitations throughout his opinion. Admin. R. 24-34. Mr. Fifield generally avers that the ALJ failed to identify sufficient reasons for rejecting his testimony. Pl.'s Op. Br. 14. He specifically challenges the ALJ's citation to the medical record regarding his alleged left leg and seizure impairments, and the ALJ's inference that positive mental health evaluations between June and August 2013 suggested Mr. Fifield could perform work activity. *Id.* at 13-14. He also states the ALJ failed to apply the Commissioner's administrative ruling addressing his residual functional capacity. *Id.*

### a. Specific Impairments

The ALJ found that the medical record did not show any diagnosis or impairment "which could reasonably be expected to result in the claimant's alleged chronic back and left leg pain." Admin. R. 29. The ALJ took notice of Mr. Fifield's obesity, *id.* at 24, and discussed examinations and imaging studies showing normal left hip anatomy and function. *Id.* at 31-32.

Mr. Fifield bears the burden of establishing a medically-determinable impairment. 42 U.S.C. § 423(d)(5)(A); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); *Tackett*, 180 F.3d at 1098; 20 C.F.R. §§ 404.1512(a); 416.912(a). He presently establishes no impairment other than obesity that could cause back and left leg pain. The ALJ found Mr. Fifield's obesity "severe," but concluded "there is no clinical evidence in the record that describes his obesity as affecting a weight-bearing joint." Admin. R. 24. Mr. Fifield does not now challenge this finding, and therefore fails to establish error.

Mr. Fifield also asserts that the ALJ improperly failed to consider his testimony addressing his seizures, and implies that these seizures are related to an ongoing epilepsy diagnosis. Pl.'s Op. Br. 14. He does not, however, point to specific testimony showing limitations relating to his seizures.

The ALJ discussed Mr. Fifield's seizure activity, and found it related to alcohol withdrawal. Admin. R. 30. Mr. Fifield stipulated to this finding on April 24, 2014. *Id.* at 445. The Commissioner now asserts Mr. Fifield's seizures were related to his alcohol use, Def.'s Br. 12, and the medical record discussed above supports this finding. The ALJ's finding on the matter should therefore be affirmed.

### b. Mental Health Evaluations

Finally, Mr. Fifield also asserts that the ALJ erroneously rejected his testimony because his mental health improved between June and August 2013. Pl.'s Op. Br. 14 (citing Admin. R. 31). The ALJ's finding, in full, stated that Mr. Fifield's seizure activity and mental health improved when he ceased using alcohol. Admin. R. 31. While an ALJ may not cherry-pick the record and cite isolated instances of improvement, *Garrison*, 759 F.3d at 1017, the ALJ here correlated Mr. Fifield's improvement with his alcohol cessation. The ALJ's specific finding stated only that Mr. Fifield's improvement in sobriety contradicted his indication that his impairments have not improved since he completed initial application questionnaires. *Id.* (citing "Disability Report – Appeal [*id.* at 432, 437]). This citation, and the ALJ's citation to Mr. Fifield's medical record, discussed above, and his mental health counselling notes (Admin. R. 625, 641) support the ALJ's analysis. *Id.* The ALJ's finding is based upon substantial evidence and should therefore be affirmed.

///

### c. Social Security Ruling 96-9p

Finally, Mr. Fifield submits that "he only asserts that he cannot maintain employment on a regular, continuing basis, rather than that he is incapable of all work activity." Pl.'s Op. Br. 14. He points to no testimony supporting this position. The Commissioner's indicated administrative ruling states that an individual's residual functional capacity ("RFC") is "the maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Soc. Sec. Ruling 96-8p, "Assessing Residual Functional Capacity in Initial Claims," at * 2 (available at 1996 WL 374184). Mr. Fifield's submission fails to distinguish between his allegation of disability and administrative determination of his workplace abilities, discussed below. Mr. Fifield's citation to the Commissioner's administrative ruling does not now establish error in the ALJ's assessment of his testimony.

The ALJ's evaluation of Mr. Fifield's testimony should therefore be affirmed.

### B. Lay Testimony

#### 1. Lay Testimony Standards

The ALJ must give "germane" reasons for rejecting lay testimony. *Dale v. Colvin, Comm'r Soc. Sec.*, 823 F.3d 941, 943 (9th Cir. 2016); *Nguyen*, 100 F.3d at 1467. The ALJ may reject lay testimony to the extent it is consistent with similar testimony properly rejected, *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), but such analysis must apply to commensurate portions of testimony. *See id.*; *Dale*, 823 F.3d at 945-46. Discrediting a lay witness's entire testimony on the basis of reasoning applying to only a portion of it is erroneous. *Id.* at 946.

///

///

Page 16 – REPORT & RECOMMENDATION

### 2. Rachel Butler

Mr. Fifield's niece, Rachel Butler, submitted a questionnaire to the record on February 1, 2011. Admin. R. 354-62. She stated that Mr. Fifield was temporarily staying at her home, and that he spends his time watching television and occasionally walks to the mall. *Id.* at 354. Ms. Butler wrote that Mr. Fifield has nighttime leg pain, and requires reminders to perform basic hygiene and self-care tasks. *Id.* at 355. She also stated that Mr. Fifield is "unsteady on his feet and often falls," and that he does not go out alone because he might "forget where he is." *Id.* at 357. Ms. Butler repeatedly stated that Mr. Fifield is mentally slow and has difficulty with written instructions, *id.* at 357-59, but can follow spoken instructions "especially if repeated as he goes." *Id.* at 359.

The ALJ twice reiterated Ms. Butler's testimony. *Id.* at 25, 33. The ALJ noted her observations and reports of Mr. Fifield's activities. *Id.* The ALJ concluded, "even if taken as true, Ms. Butler's statements appear to reflect only a brief period of time after the claimant was released from detoxification." *Id.* at 33. Here the ALJ cited examining psychologist Dr. Leland's report that Mr. Fifield "had recovered the ability to care for himself much more adequately" when sober. *Id.* The ALJ again emphasized, "Ms. Butler's statements, while possibly true at the time she made them, do not accurately portray the claimant's functional abilities over the duration of the time since the amended alleged onset date." *Id.* The ALJ gave the statements "little weight." *Id.*

Mr. Fifield asserts that "while [he] has improved his ability to care for himself following his alcohol detoxification, his mental and physical impairments remain, so Ms. Butler's statement should be credited . . . ." Pl.'s Op. Br. 12. This submission misconstrues controlling legal authority. The ALJ was required to give reasons germane to Ms. Butler and her testimony

in weighting it. *Molina*, 674 F.3d at 1114. The ALJ adequately found that Ms. Butler's testimony addressed Mr. Fifield's functioning while intoxicated or undergoing detoxification, and did not address his functioning when sober. This reasoning should be sustained.

### 3. Charles Ferrero

Mr. Fifield's friend, Charlies Ferrero, submitted an additional report to the record on August 9, 2012. Admin. R. 422-29. Mr. Ferrero stated he has known Mr. Fifield approximately a year, and that Mr. Fifield speaks slowly and experiences medication side effects. *Id.* at 422. Mr. Fifield no longer drives and has had difficulty finding a job. *Id.* He requires reminders from his sister to complete personal care, and is "slower than average" in performing household chores. *Id.* at 424. Mr. Fifield's activities include drawing, reading, and attending Alcoholics Anonymous meetings. *Id.* at 426. He has difficulty getting along with his sister and her boyfriend, and is "pretty much a loner." *Id.* Mr. Ferraro endorsed difficulty in Mr. Fifield's memory and ability to talk, complete tasks, concentrate, understand and follow instructions, and get along with others. *Id.* at 427.

The ALJ accepted these statements to the extent they were consistent with Mr. Fifield's accepted testimony, Admin. R. 34, but noted it "adds little of substance to the evidence." *Id.* at 26. The ALJ may accept or reject lay testimony predicated upon a claimant's similar testimony that was properly accepted or rejected. *Molina*, 674 F.3d at 1114-15 (citing *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009)). The ALJ's reasoning should therefore be sustained.

///

///

///

### III.  The ALJ's Regulatory Analysis

#### A.  Step Two Severity Regulations

##### 1.  Standards

The second step of the Commissioner's five-step regulatory analysis directs evaluation of an impairment's "severity."  This analysis requires that the claimant show a medically determinable impairment which, in combination with other impairments, significantly limits his ability to perform workplace activities.   20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c).  Such impairment must last at least twelve months.  20 C.F.R. §§ 404.1509; 416.909.  The step two inquiry is a "threshold inquiry" *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987), and omissions are harmless if the ALJ's subsequent evaluation considered the impairment's effects. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

##### 2.  Analysis

Mr. Fifield asserts that the ALJ failed to consider his obesity, alleged epilepsy, left leg and hip pain, right foot heel spur, and coordination and balance issues at step two in the sequential proceedings.  Pl.'s Op. Br. 10-11.

The ALJ's step two analysis discussed Mr. Fifield's obesity at length.  Admin. R. 24-25. Mr. Fifield does not challenge the ALJ's findings, and his argument that the ALJ failed to discuss the matter is therefore without merit.

The ALJ discussed Mr. Fifield's seizure activity in assessing his residual functional capacity ("RFC").  *Id.* at 30-31.  An omission at step two in the sequential proceedings is harmless if the ALJ subsequently addresses the matter.  *Lewis*, 498 F.3d at 911 (citing *Stout v. Comm'r*, 454 F.3d 1040, 1054-55 (9th Cir. 2007).  Here, the ALJ discussed Mr. Fifield's seizure activity, and found it correlated to his alcohol use based upon the medical record discussed

above. Admin. R. 31. Mr. Fifield also testified to this at his hearing. *Id.* at 52. The ALJ also noted Mr. Fifield's reports that he stopped using alcohol, *id.*, and Mr. Fifield testified that the seizures ceased when he ceased drinking. *Id.* at 52. Mr. Fifield therefore fails to establish error in the ALJ's omission of seizure activity at step two.

Finally, the ALJ also discussed Mr. Fifield's back, foot, and left leg pain in assessing his RFC. *Id.* at 29-32. The ALJ found no medical evidence supporting an impairment which could cause chronic back and left leg pain. *Id.* at 29. Here he cited Dr. Ramsthel's examination showing generally equal leg strength, *id.* at 31, and Mr. Fifield's report to Dr. Webster that he stand an hour, sit two hours, and walk a mile. *Id.* The ALJ also discussed an October 2012 left hip x-ray showing unremarkable findings and no degenerative disease. *Id.* at 31-32.

For all of the reasons, Mr. Fifield fails to show that the ALJ erroneously omitted evaluation of his additionally alleged impairments at step two in the sequential regulatory analysis.

## B.   Residual Functional Capacity and Step Five Findings

Mr. Fifield asserts that the ALJ's Residual Functional Capacity ("RFC") formulation was incomplete, and that his finding that he could perform work existing in the national economy was consequently erroneous. Pl.'s Op. Br.14-15.

The ALJ's RFC assessment is a statement describing a claimant's workplace abilities following analysis of the evidence of record under the standards discussed above. 20 C.F.R. §§ 404.1545; 416.945. It represents the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). Mr. Fifield does not now point to specific limitations improperly omitted, nor does he establish error in the ALJ's evaluation of the evidence, discussed above. Consequently, Mr. Fifield establishes no error in the ALJ's RFC evaluation.

Page 20 – REPORT & RECOMMENDATION

At step five in the sequential proceedings, the ALJ determines whether the claimant can perform work existing in the national economy in significant numbers. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may draw upon a vocational expert's testimony to show that a claimant can perform such work. 20 C.F.R. §§ 404.1566(d)-(e); 416.966(d)-(e). The ALJ's questions to the vocational expert must include all properly-supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1665-66 (9th Cir. 2001).

Mr. Fifield's RFC included "capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple repetitive tasks with no public contact and only occasional contact with supervisors and coworkers." Admin. R. 28. The ALJ presently asked the vocational expert to consider an individual limited to simple and repetitive tasks, no public contact, and occasional coworker and supervisor interactions. *Id.* at 35, 57-58. This questioning includes all limitations assessed in Mr. Fifield's RFC. Mr. Fifield therefore fails to establish error.

## IV. Due Process Challenge

Finally, Mr. Fifield asserts that the ALJ violated his due process rights. Pl.'s Op. Br. 15-16. He specifically states that the ALJ should have developed the record, and that the ALJ improperly truncated his hearing. *Id.* at 16.

The Ninth Circuit has addressed due process in this context on several occasions. To succeed in showing violation of due process rights, a social security claimant must show that "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Bayliss v. Barnhart*, 427 F3.d 1211, 1214-15 (9th Cir. 2005) (quoting *Rollins v. Massinari*, 261 F.3d 853, 858 (9th Cir. 2001)) (internal quotations omitted).

Although the record suggests that Mr. Fifield's administrative hearing was relatively short (Admin. R. 46-59), Mr. Fifield's counsel also stated that he had no further questions, *id.* at 55, and declined to ask further questions of the vocational expert testifying at the hearing. *Id.* at 59. The ALJ issued a sixteen-page decision which discussed the evidence above and other matters in considerable detail. This Court therefore finds no egregious behavior tantamount to due process violation.

Mr. Fifield finally contends that the ALJ erred in failing to order a requested neuropsychological evaluation. Pl.'s Op. Br., 16. He theorizes that, because he was evaluated with a full-scale IQ score of 79, further testing should have been ordered to establish his Verbal IQ and Performance IQ. *Id.*

Mr. Fifield's indicated citation addresses a claim for benefits due to intellectual disability (formerly termed "mental retardation"). *Garcia v. Comm'r Soc. Sec.*, 768 F.3d 925, 926 (9th Cir. 2014). The Commissioner's intellectual disability regulations apply to individuals with an IQ of 70 or lower only, beginning before age 22. 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05. The Ninth Circuit reasoned that, in a case that turned "on whether a claimant has an intellectual disability and in which IQ scores are relied upon for the purpose of assessing disability" it followed that full-scale IQ scores were necessary. *Garcia*, 768 F.3d at 930-31. The court looked to the regulations addressing intellectual disability, and noted that they disfavored abbreviated IQ test results. *Id.* at 931.

Mr. Fifield made no allegation of "intellectual disability" pursuant to § 12.05, and did not assert such at any stage of the proceedings. He asserts mental "slowness" only, which does not require full-scale IQ evaluation under the indicated authorities. This argument therefore fails.

///

## RECOMMENDATION

The Commissioner's decision that Mr. Fifield is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon substantial evidence and the proper legal standards. It should therefore be AFFIRMED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. FED. R. CIV. P. 72. If objections are filed, any response is due within fourteen (14) days after being served with a copy of the objections. *Id.* Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

DATED this _____ day of January, 2017.

MARK D. CLARKE
United States Magistrate Judge